IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARGARETTA SANCHEZ,

                 Plaintiff,

         v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                 Defendant.

**OPINION AND ORDER**

13-cv-519-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an appeal of an administrative decision denying plaintiff Margaretta Sanchez's claim under the Social Security Act, 42 U.S.C. § 405(g), for disability benefits and supplemental security income. The administrative law judge found that plaintiff suffered from severe impairments in the form of rheumatoid arthritis, fibromyalgia, inflammatory arthritis, diabetes, obesity and asthma, but that plaintiff was not disabled because she retained the ability to perform a range of sedentary work.

On appeal, plaintiff challenges the administrative law judge's decision on many grounds, but these arguments fall within four general categories: (1) the administrative law judge assessed plaintiff's credibility improperly; (2) the administrative law judge did not give adequate consideration to the question whether plaintiff suffers from an impairment that meets or equals medical listing 14.09(A); (3) the administrative law judge gave too little weight to the opinion of plaintiff's treatment providers and too much weight to the opinions

1

of the state agency physicians; and (4) the administrative law judge did not adequately consider all of plaintiff's impairments. Although many of plaintiff's objections are not well-founded, I conclude that a remand is necessary because the administrative law judge did not adequately explain why plaintiff does not suffer from an impairment that meets or equals listing 14.09(A) and why he gave the opinions of the state agency consultants more weight than he gave to those of plaintiff's treatment providers.

OPINION

A. Listed Impairment

If the administrative law judge determines that the claimant has a "severe" impairment within the meaning of 20 C.F.R. § 404.1520, she must determine next whether the impairment "meets or equals a listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1. If it does, the claimant is disabled as a matter of law. 20 C.F.R. § 404.1509.

In this case, plaintiff argues that the administrative law judge failed to adequately consider whether she had an impairment that met or equaled Listing 14.09(A). That listing includes a number of requirements, but defendant focuses on only one of them, which is that plaintiff's impairment "result[s] in the inability to ambulate effectively." Listing 14.09(A) refers the reader to 14.00(C)(6) and then 1.00(B)(2)(b) for a definition of "ambulate effectively." One part of that definition states that "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 1.00(B)(2)(b)(2). Citing this sentence, defendant

2

argues that plaintiff "has not suggested that the ability to walk for two hours a day with some use of an assistive device is insufficient to carry out activities of daily living." Dft.'s Br., dkt. #20, at 19.

The problem with defendant's argument is that it does not take into account the definition of "ineffective ambulation" in 1.00(B)(2)(b)(1), which is "having insufficient lower extremity functioning . . . to permit independent ambulation *without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities*." Plaintiff has a prescription for a walker and testified that she uses the walker on her "bad days," which she says make up about 25 days a month.

It is not immediately clear why the administrative law judge concluded that plaintiff did not meet the requirements of 14.09(A). He stated that he "specifically considered listing 14.09" and that "the objective medical evidence" did not support a finding under 14.09(A). AR 38. However, he did not give specific reasons for that conclusion, stating instead that his reasons were "discussed in further detail throughout this decision," without pointing to any examples. He did not discuss Listing 14.09(A) again. He discussed plaintiff's walker in a later portion of the opinion, but he concluded that she does not need one because "there is no medical recommendation or prescription for an assistive device." AR 40. Defendant acknowledges in its brief that the administrative law "erred by stating that [plaintiff] had not been" prescribed a walker, dkt. #20 at 21, so I agree with plaintiff that the administrative law judge must reconsider whether plaintiff meets or equals 14.09(A). The administrative law judge should also consider whether he should obtain an expert opinion on this issue, in

3

accordance with SSR 96-6p.  (Plaintiff also discusses 14.09(B) in her reply brief, but I agree with defendant that plaintiff forfeited this issue by failing to raise it in her opening brief.)

## B.  Credibility

The Court of Appeals for the Seventh Circuit has stated that an administrative law judge's credibility determination will not be overturned unless it is "patently wrong." Eichstadt v. Astrue, 534 F.3d 663, 668 (7th Cir. 2007).  At the same time, the court has said that the administrative law judge must support credibility findings with evidence in the record, Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009), building an "accurate and logical bridge" between the evidence and his decision.  Castile v. Astrue, 617 F.3d 923, 929 (7th Cir. 2010).  In addition, "when . . . the [credibility] determination rests on objective factors or fundamental implausibilities rather than subjective considerations, . . . courts have greater freedom to review the ALJ's decision."  Indoranto v. Barnhart, 374 F.3d 470, 474 (7th Cir. 2004) (internal quotations and alterations omitted).

At the administrative hearing, plaintiff testified that she believes her arthritis prevents her from working because her joints "flare up," her knees "give out," and she is "very stiff" and "very sore."  AR 98.  Her rheumatoid arthritis causes pain, stiffness and swelling in her knees, hips, fingers and wrists.  AR 107.  With respect to fibromyalgia, plaintiff said that it too causes "stiffness," "pain" and "flareups in [her] joints," including her fingers, hips, knees and ankles.  AR 115.  Both sitting and standing for "a long time" make her "very stiff."  AR 108.

4

Plaintiff testified that it takes her to 25 to 30 minutes to get out of bed in the morning because she is so stiff.  AR 109.  She lies down after she takes her morning medication because it makes her dizzy. AR 113.  She lies down again in the afternoon "because of [her] arthritis and [her] flare ups, [her] inflammation."  AR 115.

She lost her previous job as a house cleaner because the inflammation in her joints often prevented her from going into work.  AR 106.  She can do some house work on her "good days," but she has about 25 "bad days" in a month. AR 100-01.   Sometimes she needs help from her family to do the laundry and to get dressed.  AR 108.  She cannot hold a frying pan because it hurts her wrists too much.  AR 109.  She uses a cane to get around the house; on good days, she uses the cane outside as well, but on bad days she uses a walker outside the house.  AR 110.

Both sides assume that, if plaintiff's testimony is accepted as true, she would be disabled within the meaning of the Social Security Act, or unable to work full-time on a regular basis.  However, the administrative law judge found that plaintiff retained the residual functional capacity to perform sedentary work (with a few additional restrictions that the parties do not discuss in their briefs).  AR 38.  As is often the case, the administrative law judge did not identify specific testimony by plaintiff that he rejected but instead wrote that  plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment."  AR 39.  The Court of Appeals for the Seventh Circuit has criticized similar language in many opinions  because it "implies that the ability

to work is determined first and is then used to determine the claimant's credibility." Bjornson v. Astrue,  671 F.3d 640, 645 (7th Cir. 2012).  See also  Shauger v. Astrue, 675 F.3d 690, 696 (7th Cir. 2012); Punzio v. Astrue, 630 F.3d 704, 709 (7th Cir. 2011); Martinez v. Astrue, 630 F.3d 693, 696–97 (7th Cir. 2011); Spiva v. Astrue, 628 F.3d 346, 348 (7th Cir. 2010); Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010).  It is perplexing why the Social Security Administration insists on continuing to use this boilerplate language despite repeated admonishments by the court of appeals.  Regardless, an administrative law judge's use of the boilerplate is not a ground for reversing the decision so long as he "otherwise points to information that justifies his credibility determination."  Pepper v. Colvin, 712 F.3d 351, 367-68 (7th Cir. 2013).

The administrative law judge gave many reasons for questioning plaintiff's credibility. Plaintiff challenges each of these reasons.

First, the administrative law judge said that plaintiff's testimony regarding the severity of her pain is "so extreme compared to the objective abnormalities as to appear implausible." AR 39.  In particular, he says that her "lab work is not as abnormal as one would expect"; her "rheumatic systems reviews have . . . generally been negative and not fully consistent with the severity of her alleged symptoms"; many of her treatment notes indicate that she has "far fewer tender points" than are usual for fibromyalgia; and the record shows that her knee arthritis is "mild."  Id. at 39.  In a later portion of the decision, the administrative law judge cites the opinion of the state agency consultants for the proposition that "the medical record showed only mild and transient abnormalities."  Id. at 41.

6

Initially, plaintiff objected to the administrative law judge's observations about the objective medical evidence on the ground he was using his own lay judgment to interpret the medical records, which he is not permitted to do.  Myles v. Astrue, 582 F.3d 672, 677-78 (7th Cir. 2009).  However, after defendant pointed out that the administrative law judge was relying on the opinions of the state agency consultants, plaintiff abandoned that objection in her reply brief, and instead raised a number of objections about those opinions.  I will address those objections below in the context of discussing the weight the administrative law judge gave to the medical opinions.

Second, the administrative law judge wrote that plaintiff's "subjective reports are not fully consistent with" the opinion of her rheumatologist, Jilaine Bolek-Berquist.  AR 39.  In particular, the rheumatologist stated that she was "unsure to what degree [plaintiff's] overall pain" was related to her diagnosis rather some other reason.  In addition, Bolek-Berquist had reported that plaintiff's pain was "positional" rather than the result of a medically determinable impairment.  Finally, an examination showed that plaintiff was not putting forth full effort.  AR 39.

The administrative law judge does not explain the relevance of the first statement, but I assume that he is relying on it to suggest that Bolek-Berquist believed that plaintiff may be malingering.  However, the full context of the quote does not support that interpretation:

> I don't think we've gotten full control of [plaintiff's rheumatoid arthritis] given her stiffness and swelling with elevated markers of inflammation.  That being said, I'm unsure to what degree her overall pain is related to RA other reasons that she has to have pain.  I am going to try to up her RA treatment to a biologic agent to see if this makes a substantial difference in her markers of inflammation and pain.

7

AR 540.  This discussion may suggest that Bolek-Berquist is uncertain about the causes of plaintiff's pain, but there is no suggestion that she believes that plaintiff is malingering.  In fact, Bolek-Berquist later gave the opinion that plaintiff was *not* a malingerer.  AR 754.

The statement that plaintiff's pain is "positional" comes from a different doctor and, more important, is about "epigastric pain."  AR 528.  ("Feels better when sitting up.").  The administrative law judge did not point to any statements by plaintiff in which she denied that her epigastric pain was positional, so the statement from the doctor does not undermine plaintiff's credibility.

The examination the administrative law judge cites in which plaintiff was not putting forth full effort was conducted an occupational therapist, not Bolek-Berquist.  However, the therapist did conclude that plaintiff's "self-limiting performance indicates that abilities in some areas may actually be higher than demonstrated in this Functional Capacity Evaluation."  AR 676.  Regardless whether the administrative law judge misstated the name of the person who conducted the evaluation, the administrative law judge was entitled to rely on that evaluation in assessing plaintiff's credibility.  McKinzey v. Astrue, 641 F.3d 884, 891 (7th Cir. 2011) (statement by health care provider that plaintiff exaggerated symptoms supported administrative law judge's decision to question plaintiff's credibility).

Third, the administrative law judge stated that plaintiff's "more recent treatment notes do not . . . list fibromyalgia as one of the claimant's impairments."  AR 39.  He cites a treatment note from January 2012 in which plaintiff was seen by a new physician "for transfer of medical care."  AR 767.  According to the physician's notes, plaintiff did not

8

complain about fibromyalgia during the visit and the physician did not list it as one of plaintiff's conditions. AR 767-68. The administrative law judge's observation provides some support for a view that fibromyaligia is not a current concern for plaintiff, but the point has limited probative value because it does not address plaintiff's other conditions such as rheumatoid arthritis, which *was* noted during the same visit cited by the administrative law judge. Particularly because plaintiff described similar symptoms for both conditions, eliminating fibromyalgia from the mix does little to undermine plaintiff's disability claim as a general matter.

Fourth, the administrative law judge wrote that "the record reveals relatively infrequent trips to the doctor and only conservative treatment for" conditions other than fibromyalgia and rheumatoid arthritis. AR 40. However, this observation is less about plaintiff's credibility and more about whether the administrative law judge adequately considered the evidence supporting those other conditions, so I will address this issue in a separate section as well.

Fifth, the administrative law judge said that plaintiff had complained to medical providers that she was in significant pain, but providers observed that she was in "no apparent distress" or "no acute distress." AR 331, 548-50, 768. Two of these records are not probative because I see no indication in the record that plaintiff claimed to be in "distress" during the medical visit. Plaintiff did not testify that she was in severe pain 24 hours a day, seven days a week, so the absence of observable distress during a visit is not necessarily evidence of inconsistency. However, in one of the records, Bolek-Berquist wrote

that plaintiff stated that her "pain level is 10 . . . on a ten-point visual analog scale," even though the doctor observed that plaintiff had normal strength, good balance and only two swollen or tender joints at the time. AR 39. Plaintiff says that the appointment was related to dermatology rather than pain, but the issues addressed at the appointment were not so limited. Whatever the primary reason for the visit, it does not change the doctor's observations.

In another record, plaintiff's doctor, Steven Bartz, wrote in September 2010 that plaintiff "is pleasant, cooperative, in no apparent distress. She points to numerous joints having pain [but] I cannot see any obvious swelling or erythema in her knees ankles fingers. Her right wrist may have some swelling but not her left." AR 331. In response, plaintiff notes that Bartz authorized a steroid injection for plaintiff's pain during the same appointment, but the note indicates that the injection had been authorized before the appointment. AR 330. In any event, the injection does not undermine Bartz's statement that plaintiff's complaint did not match his observation.

Sixth, the administrative law judge made a related observation that plaintiff "betrayed no evidence of pain or discomfort" during the hearing, even though she said she was in pain. AR 40. "She sat for the entire hour and a half hearing without adjusting her position or standing." Id. Plaintiff's response to this is that the ability to sit for 90 minutes does not show that she can sit for at least six hours, which is what a sedentary job would require. Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995). However, the administrative law judge acknowledged that "the hearing was short-lived and cannot be considered a conclusive

10

indicator of the claimant's overall level of pain on a day-to-day basis." AR 40.  The administrative law judge's point was not that her conduct at the hearing showed that she could sit for six hours but that, in light of her testimony about the severity of her symptoms, it is surprising that she did not show *any* signs of pain or discomfort over a 90-minute period.  The administrative law judge did not err by relying on his observation for a limited purpose.

Seventh, the administrative law judge wrote that the alleged severity of plaintiff's symptoms is inconsistent with her daily activities, such as cooking, cleaning and doing laundry. AR 39.  This reasoning is problematic because the administrative law judge ignored the limitations that plaintiff said she had in performing these activities.  For example, she said that she did housework on "good days," that her family had to help her do laundry and that she could not hold a frying pan.  Also, the administrative law judge never explained how plaintiff's ability to engage in these activities undermines her allegation that she cannot sustain a full-time job.  The Court of Appeals for the Seventh Circuit has stated repeatedly that administrative law judges should take care to distinguish between the ability to do certain things some of the time and in some contexts from the ability to sustain full-time employment.  Bjornson, 671 F.3d at 647 ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.  The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by

11

administrative law judges in social security disability cases."). See also Moore v. Colvin, 743 F.3d 1118, 1126 (7th Cir. 2014) ("[A] problem we have long bemoaned [is that] administrative law judges have equated the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation."); Spiva v. Astrue, 628 F.3d 346, 351-52 (7th Cir. 2010) ("[A]n ability to engage in 'activities of daily living' (with only mild limitations) need not translate into an ability to work full time."). If administrative law judges wish to avoid repeated remands on these grounds, it would behoove them to stop extrapolating an ability to work to full time from an ability to do some household chores.

Eighth, the administrative law judge pointed out what he said were discrepancies between plaintiff's testimony and previous statements she had made. In particular, he wrote that she stated previously that she could "stand/walk" for four hours a day and that she did not take naps or "spend[] any time in bed." AR 40. I do not see any statement by plaintiff in the records the administrative law judge cited that plaintiff could stand or walk for four hours a day. Further, plaintiff did not testify at the hearing that she needed to take naps, so there is no inconsistency with her previous statement that she did not take naps during the day. However, plaintiff did write in the form she prepared for her disability application that she could walk for *three* hours and that she did not spend any time in bed during the day. AR 293. These statements seem to be inconsistent with plaintiff's testimony that she had limited walking ability and needed to lie down throughout the day, so they are some evidence in support of the administrative law judge's decision.

Plaintiff says that any discrepancies are the result of the passage of time. Plaintiff completed the form in November 2010, which was seven months before her amended onset date of June 2011. AR 36. This objection relates to the administrative law judge's alleged failure to adequately consider more recent medical records, an issue I will address below in the context of discussing the medical opinions.

Ninth, the administrative law judge relied on plaintiff's job history to question her credibility. First, he wrote that plaintiff worked "only sporadic temporary jobs" before her onset date, which "raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." AR 41. Second, he wrote that plaintiff continued to work part time after she was diagnosed with fibromyalgia and arthritis. AR 41. The administrative law judge did not explain further, but he seems to making the argument that plaintiff's failure to work more before her onset date shows that she is not disabled and her failure to work less after her onset date also shows that she is not disabled. The administrative law judge did not ask plaintiff to explain her reasons for working as much as she did, so it was improper for him to speculate. Particularly because the administrative law judge did not question plaintiff's testimony that she lost her most recent job because of her symptoms, plaintiff's work history has limited probative value.

Finally, plaintiff challenges the administrative law judge's credibility assessment for what it *doesn't* include, which is any discussion of her "constant" attempts to treat her pain with medication. She cites SSR 96-7 for the proposition that "[p]ersistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications,

13

trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms." Defendant does not challenge this objection, so I will assume that the administrative law judge should have considered this issue in his decision.

In sum, some of the administrative law judge's reasons for questioning plaintiff's credibility are well-founded and some are not.  In some cases, the Court of Appeals for the Seventh Circuit has upheld an administrative law judge's decision even when the court rejected some of the administrative law judge's reasoning, on the ground that "the standard of review employed for credibility determinations is extremely deferential."  Bates v. Colvin, 736 F.3d 1093, 1098 (7th Cir. 2013).  However, because I am remanding the case for other reasons, I conclude that it is unnecessary to decide whether the administrative law judge's assessment of credibility is "good enough" to be sustained.  On remand, the administrative law judge should reconsider his credibility assessment to address the problems identified in this opinion.

### C.  Plaintiff's Secondary Impairments

Plaintiff says that the administrative law judge did not adequately consider the effect of her diabetes, asthma, GERD, insomnia, diarrhea, anxiety, sleep apnea and obesity. However, despite having multiple opportunities to do so during the hearing, plaintiff never

14

identified any limitations she suffered because of those conditions, so I cannot say it was unreasonable for the administrative law judge to follow her lead.  Even in her opening brief, plaintiff does not point to any evidence showing that any of these conditions, alone or in combination with other impairments, prevent her from working or are otherwise inconsistent with the administrative law judge's residual functional capacity assessment.

In her reply brief, plaintiff raises the issue that her obesity could affect a finding under 14.09(A) on the question whether plaintiff can ambulate effectively.  The administrative law judge should address this issue on remand.  I also agree with plaintiff there is a potential inconsistency between the administrative law judge's finding that her diabetes, obesity and asthma are "severe impairments" and his decision not to find any limitations imposed by those impairments.  The administrative law judge should resolve this discrepancy on remand.

### D.  Medical Opinions

The administrative law judge considered several medical opinions.  First, Jilaine Bolek-Berquist, who became plaintiff's rheumatologist in September 2010, discussed plaintiff's condition in a "functional capacity questionnaire" that she prepared in January 2011.  AR 753-65.   In the questionnaire, Bolek-Berquist gave plaintiff a diagnosis of rheumatoid arthritis, causing joint pain, reduced range of motion, tenderness, crepitus and trigger points. AR 753.  She concluded that plaintiff was not a malingerer, that she had "moderate" limitations in handling normal work stress and that "often" her pain would be "sufficiently severe to interfere with attention and concentration."  AR 754.

15

Second, Heidi Alderman, an occupational therapist, evaluated plaintiff and prepared a "summary of functional abilities" in November 2010.  In her comments, Alderman wrote the following:

> The client demonstrated marginally consistent performance in this Functional Capacity Evaluation.  Occasional inconsistencies between test performance and functional history questionnaire, and between subjective input and objective data were noted.  For example, dominant hand bell curve not established and different efforts recorded different similar grip testing.  Client also did not show difficulties with tests prior to stopping some tests.  Although this test represents safe work abilities, this self-limiting performance indicates that abilities in some areas may actually be higher than demonstrated in this Functional Capacity Evaluation.  AR 676.

Alderman concluded that plaintiff could lift and carry 20 pounds no more than two hours a day, stand and walk no more than two hours a day and walk less than one block "without rest or severe pain."  AR 684.  However, she did not find any sitting limitations. Id.  Finally, she found that plaintiff's symptoms would interfere with her work "occasionally," which is defined on the form to mean five percent to thirty-three percent of an eight-hour day.  AR 685. Overall, Alderman concluded that plaintiff could work two to four hours a day.  AR 686.

Finally, the administrative law judge considered the January 2011 opinion of the state agency consultant, Syd Foster, who is a physician specializing in osteopathic manipulative therapy.   After reviewing plaintiff's medical records, Foster concluded that plaintiff could (1) lift 10 pounds occasionally and less than 10 pounds frequently; (2) stand at least two hours a day; and (3) sit for about six hours a day.  Overall, Foster concluded that plaintiff was capable of performing sedentary work with environmental restrictions.  AR 416. A

16

second consultant, Mina Khorshidi, concurred with Foster's conclusion, but did not explain her decision.  AR 475

The administrative law judge's handling of these opinions is a mixed bag.  With respect to Bolek-Berquist, the only thing the administrative law judge said about the opinion is that it "did not include any specific physical limitation."  AR 41.  He ignored Bolek-Berquist's opinions that plaintiff's pain would interfere with her ability to concentrate and that plaintiff was limited in her ability to handle work stress.  Campbell v. Astrue, 627 F.3d 299, 306 (7th Cir. 2010) (administrative law judge must provide "good reasons" for discounting treating physician's opinion).  Defendant provides reasons why she believes the administrative law judge may have rejected these aspects of Bolek-Berquist's opinion, but it is well-established that the reasoning for the administrative law judge's opinion must be included in that opinion; the commissioner cannot provide reasoning after the fact.  Spiva, 628 F.3d at 353; Larson v. Astrue, 615 F.3d 744, 749 (7th Cir. 2010).  Accordingly, the administrative law judge should reconsider Bolek-Berquist's opinion, using the checklist of factors in 20 C.F.R. § 404.1527(c).  Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009) ("If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion.") (citing 20 C.F.R. § 404.1527).

With respect to Alderman, the administrative law judge noted that she had found that plaintiff's abilities were greater than what was represented in the evaluation and that

Alderman's opinion was "generally consistent with this decision," with the exception that Alderman found that plaintiff was limited to working two to four hours a day.  AR 41.  The administrative law judge discounted that opinion on the ground that it "appears based on claimant's work history rather than her actual abilities."  Id.  Plaintiff does not challenge the administrative law judge's reasoning for rejecting Alderman's conclusion regarding the number of hours plaintiff can work, so I do not consider that issue.  However, she says that the administrative law judge again overlooked the opinion regarding plaintiff's symptoms interfering with her work.  Although Alderman found that plaintiff's symptoms would interfere only "occasionally," the form Alderman used defined "occasionally" as including up to one-third of the employee's time.  Plaintiff cites the vocational expert's testimony for the proposition that being off task for more than ten percent of the time would preclude plaintiff from sustaining full time work.  AR 134.  Accordingly, the administrative law judge should reconsider Alderman's opinion as well, using SSR 06-03p, which governs consideration of opinions of many health care providers who are not physicians.

The administrative law judge adopted the opinion of the state agency consultants that plaintiff could perform a range of sedentary work.  Plaintiff's primary objection to the administrative law judge's reliance on the state agency consultants is that they did not have the benefit of nearly 300 pages of medical records that plaintiff submitted later.  The administrative law judge noted this objection in his decision:

> The claimant alleges that her condition has worsened since the State agency opinion, but the medical record, as described above, does not support any worsening in her condition beyond the limitations in the residual functional capacity.  I note that the limitations found in this decision are consistent with

18

> the claimant's alleged worsening, to the extent supported by the medical record, given that her initial complaints were of only intermittent symptoms associated with 35-40 minutes of stiffness in the morning and difficulty walking for longer distances. The record does not support that she would be unable to sit throughout a day, stand/walk for 2 hours, or use her upper extremities within the limited scope described in the residual functional capacity.

AR 41. This statement is conclusory and it does not address test results showing the worsening of plaintiff's rheumatoid arthritis, Plt.'s Br., dkt. #21 at 17 (citing AR 466-71, 774-77), plaintiff's prescription for a walker that she obtained after the opinion of the state agency consultants, id. at 16 (citing AR 99, 107, 554) or more aggressive attempts to treat plaintiff's pain with medication. Id. at 20-21 (citing AR 111-13, 355-56, 395-97, 761-63). Accordingly, the administrative law judge should reconsider his decision in light of those records.

Plaintiff also objects to the administrative law judge's reliance on the state agency opinions because he did not give any consideration to the fact that the state agency consultants were not specialists in the relevant field and that they had not treated or examined plaintiff. Generally, opinions from sources who have treated the plaintiff are entitled to more weight than non-treating sources. 20 C.F.R. § 404.1527(d)(1) and (2). A physician's specialty is a relevant consideration as well. Id. The administrative law judge should address both of these factors on remand.

ORDER

IT IS ORDERED that Margaretta Sanchez's motion for summary judgment, dkt.

19

#12, is GRANTED.   The decision denying plaintiff benefits is REVERSED and

REMANDED under sentence four of 42 U.S.C. § 405(g).  The clerk of court is directed to

enter judgment in favor of plaintiff and close this case.

      Entered this 22d day of July, 2014.

                              BY THE COURT:
                              /s/
                              BARBARA B. CRABB
                              District Judge